IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALFONSO GONZALEZ, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-05-0015 |
| | § | |
| DOUG DRETKE, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM AND ORDER GRANTING
RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**

Pending in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2254 is Respondent's Motion for Summary Judgment (Document No. 6) against Petitioner's Federal Petition for Writ of Habeas Corpus by a Person in State Custody (Document No. 1). After reviewing Petitioner's Federal Application for Writ of Habeas Corpus, Respondent's Motion for Summary Judgment, Petitioner's Response thereto (Document No. 28), the state court records, and the applicable law, the Magistrate Judge ORDERS, for the reasons set forth below, that Respondent's Motion for Summary Judgment (Document No. 6) is GRANTED, Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1) is DENIED, and this § 2254 proceeding is DISMISSED WITH PREJUDICE on the merits. It is further ordered that a Certificate of Appealability is DENIED.

I.       **Introduction and Procedural History**

Alfonso Gonzalez ("Petitioner"), currently on parole, is challenging his conviction in the

337th Judicial District Court of Harris County, Texas, Cause No. 727799, for engaging in organized criminal activity.   Petitioner was found guilty of that offense by a jury, sentenced to 20 years' incarceration, and fined $10,000.   Petitioner appealed his conviction to the Texas Fourteenth Court of Appeals, which affirmed the conviction in a published opinion entered on November 29, 2001. *Gonzalez v. State*, 63 S.W.3d 865 (Tex.App.–Houston [14th Dist.] 2001).   Petitioner's petition for discretionary review was granted by the Texas Court of Criminal Appeals, which thereafter affirmed the conviction in a published opinion entered October 8, 2003.  *Gonzalez v. State*, 117 S.W.3d 831 (Tex.Crim.App. 2003).   Petitioner did not file a petition for writ of certiorari or a state application for writ of habeas corpus.   This § 2254 proceeding was filed on January 4, 2005.

Respondent has filed a Motion for Summary Judgment (Document No. 6) to which Petitioner has filed a response in opposition (Document No. 28).

## II.    **Factual Background**

The factual background, set forth by the Texas Court of Criminal Appeals in its opinion affirming Petitioner's conviction, is as follows:

> [Petitioner] and several co-defendants were indicted for engaging in organized criminal activity, to wit, theft.  *See* Tex. Penal Code Ann. § 71.02 (Vernon 1994 & Supp.2001).
>
> The group stole more than $200,000 in an insurance fraud scheme in which automobile accidents were staged and insurance companies were billed for medical treatment of persons purportedly injured in the staged accidents. [Petitioner] was a licensed physician purporting to treat claimants involved in the staged car accidents. Percy Gonzalez, one of the participants in the conspiracy, was the State's key witness against [Petitioner].  He had first participated in a staged wreck after which he was attended by [Petitioner]. Percy later accepted a job at [Petitioner's] clinic, generating phony medical narratives and medical bills under [Petitioner's] supervision. [Petitioner] had discussed with Percy the financial arrangements he had with the co-defendant who was in charge of recruiting and paying the numerous individuals

who staged the auto accidents and posed as injured passengers.

After [Petitioner] and Percy were indicted, Percy had several telephone conversations and at least two meetings with Ralph Gonzalez, [Petitioner's] attorney.  During these encounters, it was agreed that [Petitioner] would pay Percy $10,000.  The reason for the payment was in dispute.  The transfer of the first payment of $3,000 was completed.  [Petitioner] was present during at least one of the meetings, and Marco Vargas, Percy's friend, was present during at least one meeting and was involved in the transfer of the $3,000.  [Petitioner] refused to pay the remaining $7,000.

The State moved to disqualify attorney Gonzalez as [Petitioner's] counsel under disciplinary rule 3.08 [Tex. Disciplinary R. Prof'l Conduct 3.08], because he had personal knowledge bearing directly on the guilt or innocence of his client and the credibility of the State's key witness and was therefore a potential witness whose credibility would be at issue regardless of whether he took the stand.

At the hearing on the motion to disqualify, Percy claimed the payment was an attempt to buy testimony favorable to [Petitioner]; attorney Gonzalez claimed the money was paid initially out of [Petitioner's] moral obligation to help Percy, [Petitioner's] employee, pay for an attorney, but that Percy then attempted to extort the money from [Petitioner], threatening to testify unfavorably regarding [Petitioner] if [Petitioner] did not pay the $10,000.  To back this up, attorney Gonzalez offered a transcript of one of the telephone conversations between himself and Percy that he had recorded. He had recorded some, but not all, of the telephone conversations he had with Percy and none of the in-person meetings.  He did not introduce the transcript of the recording or any of the recordings into evidence and had refused to produce them to the prosecution.

Attorney Gonzalez argued, both in his response to the motion to disqualify and at the disqualification hearing, that he should not be disqualified from representing [Petitioner].  First, he did not believe that he would be a necessary witness in the case.   Second, [Petitioner] would suffer a substantial hardship from his disqualification.  He based his first argument on the existence of the taped conversations and his ability to impeach Percy's testimony regarding the untaped meetings through rigorous cross-examination. At the hearing, he also focused on his contentions that his testimony would not be adverse or prejudicial to his client, and that whether he would testify was purely speculative.

At the hearing on the motion to disqualify defense counsel, the trial court heard testimony from Percy Gonzalez, Marco Vargas, and attorney Gonzalez, among others, and argument from the State and attorney Gonzalez.  The witnesses's testimony focused mainly on detailing what transpired at the meetings and in the conversations attorney Gonzalez had with Percy and what the witnesses believed the basis was for agreeing to pay Percy.

While cross-examining Percy Gonzalez, attorney Gonzalez at one point made the comment to the judge that Percy's answer was "absolutely correct."   While cross-examining Vargas, after Vargas testified he had first met attorney Gonzalez at the Red Lobster, attorney Gonzalez asked "Would it surprise you that I have never met with you or anybody at Red Lobster?"

The trial court granted the State's motion to disqualify defense counsel.

Thereafter, a joint trial took place and [Petitioner] was convicted. [FN2]   After [Petitioner's] motion for new trial was denied, he appealed, raising among his points of error the violation of his Sixth Amendment right based on the trial court's pre-trial ruling disqualifying his counsel of choice.

> FN2. On November 8, 1996, over six months after the trial court granted the State's motion to dismiss defense counsel, the trial court ruled that a number of co-defendants, including [Petitioner], would be tried jointly.  Three months after that, the trial court granted one of these co-defendant's motion to suppress evidence on the allegations of bribery and extortion which were the basis upon which attorney Gonzalez was disqualified.  The court granted the motion because, while relevant, the probative value of the evidence was substantially outweighed by its prejudicial effect to the co-defendants.

The court of appeals affirmed [Petitioner's] conviction, finding the trial court did not abuse its discretion in determining that dismissal was justified.  [*Gonzalez v. State*, 63 S.W.3d 865 (Tex.App.–Houston [14th] 2001)]  The court of appeals concluded the record supported the finding that, there existed, at the time of disqualification, a very real probability that attorney Gonzalez would be called upon to testify on a hotly contested, very controversial issue that was of paramount importance to the defense, thus making his credibility an issue.  Further, the court of appeals found the State had sufficiently demonstrated attorney Gonzalez's continued representation, in light of such testimony, would cause actual prejudice to the prosecution.

*Gonzalez*, 117 S.W.3d at 835-36.

III.   **Claims**

In his § 2254 application, Petitioner raises two claims related to his conviction in Cause No. 727799:

4

1.     that his Sixth Amendment right to counsel was violated when his choice of counsel was disqualified; and

2.     the trial court unreasonably and arbitrarily interfered with his Sixth Amendment right to choose his counsel.

In his direct appeal, Petitioner raised similar claims, among others, including: "(1) that the evidence is legally and factually insufficient to support the verdict; (2) that the trial court erred in disqualifying his original attorney; (3) that the trial court improperly commented on the constitutional rights of defendants; and (4) that the trial court erred in refusing to instruct the jury that a particular witness was an accomplice witness." *Gonzalez*, 63 S.W.3d at 868.  In a written opinion, the Texas Court of Appeals rejected each of these claims on the merits.  The Texas Court of Criminal Appeals granted discretionary review to "address under what circumstances the possibility of prejudice to the State's case trumps the defendant's Sixth Amendment right to retained counsel of his choice." *Gonzalez*, 117 S.W.3d at 835.

## IV.   <u>Standard of Review</u>

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim presented in a federal habeas corpus proceeding has already been adjudicated on the merits in a state proceeding, federal review is quite limited.  28 U.S.C. § 2254(d) provides:

(d)  An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the
State court proceeding.

"[A] decision by a state court is 'contrary to' [the United States Supreme Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" *Price v. Vincent*, 538 U.S. 634 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)).  A state court decision involves an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.  But "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.   Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.'" *Price*, 538 U.S. at 641 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)).

Of utmost significance under § 2254(d) is the principle that once a federal constitutional claim has been adjudicated by a state court, a federal court cannot conduct an independent review of that claim in a federal habeas corpus proceeding.  Rather, it is for the federal court only to determine whether the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, and whether the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not

6

determinative.  In addition, the correctness of the state court's decision is not determinative.  As instructed by the Supreme Court in *Wiggins v. Smith*, 539 U.S. 510 (2003), "[i]n order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous … The state court's application must have been 'objectively unreasonable.'" (citations omitted).

"The burden is on the petitioner to show that [he] is entitled to relief under the highly deferential AEDPA framework." *Patterson v. Dretke*, No. Civ.A. H-05-2098, 2005 WL 3533385, at *3 (S.D.Tex. Dec. 22, 2005).  Petitioner has not met this burden.  While Petitioner is represented by counsel in this matter and he has presented a memorandum in support of his claims, he "has made no effort to demonstrate how he merits relief under the AEDPA standard found in § 2254(d)." *Id*. Specifically, he has failed to demonstrate that the state courts of appeal unreasonably applied the Supreme Court precedent of *Wheat v. U.S.*, 486 U.S. 153 (1988).  Notwithstanding Petitioner's failure to establish that he is entitled to federal habeas corpus relief, Petitioner's claims are considered in detail below.

V.    **Discussion**

The instant federal habeas corpus action was filed on January 4, 2005, and is therefore subject to the AEDPA and the current provision of § 2254(d).  Moreover, the claims for relief presented herein were presented and resolved by the state courts through Petitioner's direct appeal, and his petition for discretionary review.  As discussed below, with respect to those claims which were presented and rejected by the state courts, no relief is available in this federal habeas proceeding because Petitioner has not shown that the state courts' adjudication of the claims either

7

"resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Both of Petitioner's claims relate to whether the disqualification of his original trial counsel constituted unreasonable or arbitrary interference with his Sixth Amendment right to counsel of his own choice.  According to Petitioner,

> 1. … [Petitioner] hired a licensed attorney, Ralph Gonzalez, to represent him.  The State sought to disqualify Ralph Gonzalez because, according to the State, he would be a witness to establish an essential fact on his client's behalf.  This dual role of advocate and witness would taint the jury, resulting in actual prejudice to the State.  The trial court agreed and Ralph Gonzalez was disqualified, thus depriving [Petitioner] of his Sixth Amendment right to counsel of his choice.

> 2. The State claimed that Ralph Gonzalez was disqualified because he had instructed his client, [Petitioner], to pay [Percy] some money.  Percy was an indicted codefendant who eventually testified for the State.  According to the State, Ralph Gonzalez's dealings with Percy made him a potential witness.  Ralph Gonzalez filed a reply to the State's motion and contested his disqualification.

> At the disqualification hearing, Percy described several meetings with attorney Gonzalez and [Petitioner].  When these meetings took place, Percy was not a State's witness; he was a codefendant.  During a particular meeting, they discussed what was likely to happen at trial.  Attorney Gonzalez explained that – due to a potential conflict of interest – he could not represent Percy because he was already representing [Petitioner].  Percy nevertheless believed that [Petitioner] was morally responsible for his legal expenses because he had been working for [Petitioner] when he was indicted.

> Attorney Gonzalez told Percy that it would cost $2000-$3000 to hire a lawyer: Percy demanded $10,000.  According to Percy, attorney Gonzalez agreed that if he (Percy) kept quiet and placed the blame on another individual, [Petitioner] would give him a check for $3000, and make payments on the balance.

> Percy testified that he got a $3,000 check from [Petitioner].  The check named Percy as payee, which upset Percy because it might appear that it was a "payoff."  He called attorney Gonzalez and asked that [Petitioner] write another check for $3000, made

payable to Percy's friend, Marcos Vargas.  This check had a memo that read: "per Ralph Gonzalez."  Percy claimed that the $3000 was not given solely to assist him in hiring an attorney.

Percy told attorney Gonzalez him [sic] that if [Petitioner] did not assist him in obtaining a lawyer, he was going to testify against him.  This attitude changed the original agreement, which was to assist Percy in obtaining a lawyer, not to buy his testimony.  Attorney Gonzalez reported to the State and to Percy's lawyer that Percy was trying to extort money from [Petitioner].

Attorney Gonzalez testified that he had taped four or five telephone conversations with Percy that he would offer at trial for impeachment if Percy's trial testimony conflicted with the taped conversations.

Attorney Gonzalez informed the trial court that if Percy testified about the alleged bribery, it would not be necessary for him to testify – and he did not intend to do so – because the tapes of the telephone conversations would become admissible to impeach Percy.

The trial court did not question that attorney Ralph Gonzalez testified truthfully in the hearing; the court accepted what he said "as the honest truth."  But the court nevertheless disqualified attorney Gonzalez and left [Petitioner] without the lawyer of his choice.  The court's action was unreasonable and deprived [Petitioner] of his Sixth Amendment right to counsel of his choice.

§ 2254 Application (Document No. 1) at 2-4.

In addressing Petitioner's Sixth Amendment right to choice of counsel claims, both the Fourteenth Court of Appeals and Court of Criminal Appeals properly relied upon the Supreme Court decision in *Wheat v. U.S.*, 486 U.S. 153 (1988), to establish a legal framework for determining whether the trial court abused its discretion in disqualifying attorney Gonzalez.  *Gonzalez*, 63 S.W.3d at 875-77 (noting the right to counsel of choice "can be overridden by important considerations relating to the integrity of the judicial process and the fair and orderly administration of justice" and citing *Wheat*, 486 U.S. at 158-60); *Gonzalez*, 117 S.W.3d at 836-38 n.6 (citing *Wheat*, 486 U.S. at 159, for the proposition that "the defendant's right to counsel of choice is not absolute").  The Court of Criminal Appeals further recognized that "when a trial court unreasonably or arbitrarily interferes

with the defendant's right to choose counsel, its actions rise to the level of a constitutional violation." *Gonzalez*, 117 S.W.3d at 837 (citing *U.S. v. Collins*, 920 F.2d 619, 625 (10th Cir. 1990)).

Applying *Wheat* and related case law, both the Court of Appeals and Court of Criminal Appeals determined Petitioner's right to counsel of his choice was outweighed by the prejudice against the State and likely jury confusion resulting from attorney Gonzalez serving as both counsel and a likely material witness.  While both appellate court decisions had strong dissents which were premised on the extent to which the advocate-witness rule undermines a constitutionally protected right, *see Gonzalez*, 117 S.W.3d at 846-48 (dissent notes the claim of "'actual prejudice' to the government boils down to possible 'juror confusion' that might have resulted in mistrial."); *Gonzalez*, 63 S.W.3d at 883-87, under § 2254(d), this court need only determine whether the state court's decision (and adjudication of Petitioner's claims) is contrary to or involved an *unreasonable* application of clearly established federal law, and whether that decision was based on an *unreasonable* determination of the facts in light of the evidence.

The Texas Court of Criminal Appeals' application of *Wheat* to Petitioner's claims is not contrary to clearly established Federal law, as determined by the Supreme Court of the United States, did not involve an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States, and was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  The Court of Criminal Appeals agreed with the Court of Appeals' finding that

> there existed, at the time of disqualification, a very real probability that attorney Gonzalez would be called upon to testify on a hotly contested, very controversial issue that was of paramount importance to the defense, thus making his credibility an issue.  Further, the court of appeals found the State had sufficiently demonstrated attorney Gonzalez's continued representation, in light of such testimony, would cause actual prejudice to the prosecution.

10

*Gonzalez*, 117 S.W.3d at 836.  In analyzing the decision of the Fourteenth Court of Appeals, the

Court of Criminal Appeals further wrote:

> The court of appeals recognized in its legal framework that a court should not reject a defendant's chosen counsel on "[u]nsupported or dubious speculation." [FN36: *Gonzalez*, 63 S.W.3d at 875, citing *Wheat*, 486 U.S. at 166 (Marshall, J., dissenting)] However, when a judge makes a ruling on disqualification at a pretrial hearing, some speculation is involved.  The Supreme Court of the United States recognized this in *Wheat* in relation to conflicts of interest leading to disqualification.  The Supreme Court held that the presumption in favor of petitioner's counsel of choice may be overcome not only by a demonstration of actual conflict but by a showing of serious potential for conflict. [FN37: *Wheat*, 486 U.S. at 163-64.]  While comment 10 to Rule 3.08 states that the rule provides guidance where the movant can demonstrate actual prejudice to itself, comment 7 implies approval of pretrial procedural disqualification motions, suggesting that the movant should act at the earliest opportunity to avoid being subjected to the actual prejudice resulting from the opponent's acting in the dual roles and to prevent creating a situation in which the opponent's client would experience substantial hardship were his counsel disqualified.  Some speculation will be inherent in such pretrial hearings. The trial court's speculation, however, cannot be unsupported or dubious.
>
> The court of appeals concluded that, at the time the judge made the disqualification ruling, the allegation of witness tampering was still a viable part of the case and "a very real probability existed that attorney Gonzalez would be called upon to testify concerning the alleged bribery of a key witness." [FN38: *Gonzalez*, 63 S.W.3d at 880.]  Both the appellant and the court of appeals' dissent disagree with the trial court's ruling and the court of appeals' majority analysis of the probabilities involved. The court of appeals' dissent concluded that the probabilities were such that the issue would not arise at trial and therefore neither Percy nor attorney Gonzalez would have been testifying regarding the bribery/extortion issue.  This conclusion was based on both the State's knowledge that attorney Gonzalez had tapes of his conversations with Percy with which to impeach Percy and the dissent's opinion that appellant had nothing to gain by raising the issue.  Appellant makes essentially the same argument, citing the portion of one of the tape transcripts that attorney Gonzalez read into the record as illustrating the quality and force of the tapes' impeaching evidence. Appellant also argues that the State did not object at the hearing that the transcript of the taped conversation was not accurate or that the taped conversation was not authentic.
>
> Whether the dissent's conclusion is reasonable, based on the evidence before the trial court at the time of the disqualification hearing, is irrelevant. The court of appeals found that the record supported the trial court's conclusion that there was a real possibility that counsel would be called as a witness.  Besides the implication, based

on the co-defendant's motion to exclude the evidence eight months later, that the State did intend to introduce the bribery evidence at trial, the State suggested that the admissibility of the tapes would be contested at trial, there were conversations between Percy and counsel relevant to the bribery issue that were not tape recorded, and the portion of the transcript that counsel read into the record to illustrate the quality and force of the tapes' impeaching evidence contained an accusation by the State's witness that counsel was paying for his testimony and a self serving statement made by the attorney, with knowledge that the conversation was being tape recorded and that prosecution in the relevant case was ongoing, denying the accusation. The court of appeals did not err in finding the trial court's conclusion that there was a real possibility that attorney Gonzalez would have to testify was within the zone of reasonable disagreement.

*Gonzalez*, 117 S.W.3d at 844-45.

In *Wheat*, the United States Supreme Court held that district courts have "an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." 486 U.S. at 160. The Sixth Amendment right to counsel of choice is therefore subject to "substantial" and "broad latitude" by the district court in determining whether actual or potential conflicts warrant intervention. *Id.* at 163.

Under the AEDPA, the state court's decision must be so "patently incorrect as to be 'unreasonable.'" *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). Here, Petitioner has failed to show an unreasonable application of the legal principles governing this case. *Williams v. Taylor*, 529 U.S. 362, 413 (2000) (quoted in *Coble v. Dretke*, 417 F.3d 508 (5th Cir. 2005)). Furthermore, Texas courts have relied on *Wheat* in determining the constitutionality of disqualifying counsel due to conflicts of interest in similar cases. "Right to a particular counsel, whether retained or appointed, is subject to limitations, and one such limitation arises in the context of counsel with an actual or potential conflict of interest in representing the accused." *Camacho v. State*, 65 S.W.3d 107 (Tex.App. – Amarillo 2000). "[A]t least as to the federal Sixth Amendment right, a trial court is not required to accept such a waiver." *Id.* citing *Wheat*, 486 U.S. at 163. "The trial court has an

independent duty to ensure that a defendant receives a trial that is fair and that does not contravene the Sixth Amendment's essential aim of guaranteeing an effective advocate for each defendant." *Id*. citing *Wheat*, 486 U.S. at 161.  "It is within the discretion of the trial court whether to accept or refuse waivers of either actual or potential conflicts of interest, based upon the circumstances and facts of the individual case." *Id*. citing *Wheat*, 486 U.S. at 162- 64.

The Fifth Circuit has also found that "the Sixth Amendment simply does not provide an inexorable right to representation by a criminal defendant's preferred lawyer. ... Indeed, there is no constitutional right to representation by a particular attorney. ... The Sixth Amendment right to counsel of choice is limited, and protects only a paying defendant's fair or reasonable opportunity to obtain counsel of the defendant's choice." *U.S. v. Hughey*, 147 F.3d 423, 428 (5th Cir. 1998).  "An arbitrary or unreasonable action that impairs the effective use of counsel of choice may violate a defendant's constitutional right to due process of law, but the counsel of choice theme of the Due Process Clause is qualified, and may be made subject to competing concerns about the effectiveness of the adversarial process." *Id*. at 429.

Petitioner cites to no case law that requires a defendants' choice of attorney override the concern for unfair prejudice against the State.  There is also reasonable concern about jury confusion over indirect testimony or comments made by Attorney Gonzalez that bear on his role in, and possible liability for, witness tampering.  As Respondent points out, there is a line of cases based on *Wheat* which circumscribe a defendant's choice of counsel.  The concerns raised by the trial court fall under previously acknowledged exceptions under both Texas and Federal case law for "fatal" conflicts of interest a client cannot waive.  *See, e.g.*, *United States v. Peng*, 766 F.2d 82 (2nd Cir. 1985)*, United States v. Arrington*, 867 F.2d 122 (2nd Cir. 1989), and *Rosen v. Nat'l Labor Relations*

*Bd.*, 735 F.2d 564 (D.C. Cir. 1984).

Because there is no Supreme Court authority limiting *Wheat's* applicability to this case, the

Texas Court of Criminal Appeals' affirmation of the legal framework used by the Court of Appeals

is not contrary to or an unreasonable application of clearly established federal law, as determined by

the Supreme Court of the United States.  Additionally, because the record supports the determination

by the trial court that there was a likelihood of prejudice against the State, the Court of Criminal

Appeals' opinion is not based on an unreasonable determination of the facts in light of the evidence

presented in State court proceeding.  Accordingly, under § 2254(d), no relief is available on

Petitioner's claims.


**VI.     Conclusion and Order**

Based on the foregoing, and the conclusion that no relief is available on the merits of

Petitioner's claims under § 2254(d), it is

ORDERED that Respondent's Motion for Summary Judgment (Document No. 6) is

GRANTED, Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1) is

DENIED, and this § 2254 proceeding is DISMISSED WITH PREJUDICE on the merits.  It is further

ordered that a Certificate of Appealability is DENIED.

Signed at Houston, Texas, this 20th day of  January, 2006.


*Frances H. Stacy*

Frances H. Stacy
United States Magistrate Judge

14